# FOREST CITY INSURANCE COMPANY
## v.
## GEORGE C. MORGAN.

*Sales—Express Warranty of Quality, Exclusive—Action to Recover Balance Due on Contract Price of a Steam Boiler—Repairs—Instructions —Evidence—Scientific Books, Inadmissible.*

Forest City Ins. Co. v. Morgan.

1. The expression of a warranty as to quality in a contract of sale excludes any implication of a further warranty as to quality.

2. In an action to recover the balance of the contract price due on a steam boiler, it is *held:* That the warranty of quality was that the boiler should be as durable as any now in use; that the real issue which should have been submitted was whether the proposed manner of repairing would have made the boiler as durable as any now in use; that the instructions given did not impose upon the plaintiff as great a burden as the law and his contract required; that the instructions should have submitted the question whether notice of the cracks in the boiler was given to the plaintiff within a reasonable time; that the reading of scientific books to certain witnesses on their cross-examinations was improperly permitted; and that the burden of proof to show a breach of the warranty was on the defendant.

3. Scientific books are inadmissible as evidence in chief, or when offered to impair the evidence of expert witnesses.

[Opinion filed January 8, 1887.]

APPEAL from the Circuit Court of Winnebago County; the Hon. JOHN V. EUSTACE, Judge, presiding.

Messrs. A. D. EARLY and J. C. GARVER, for appellant.

Messrs. GARDNER, McFADON & GARDNER and R. F. CRAWFORD, for appellee.

The witnesses for appellee had testified that repairing the boiler in question by riveting was a proper and usual method' The two witnesses for appellant testified that riveting would be a way of repairing but not as satisfactory to them as a different method. The books read to them stated that riveting was a proper way of repairing, so that, had Thompson and Ross been experts and testified as such, the matter read from the books in no manner contradicted what they said.

Even if this court considers that the questions propounded Thompson and Ross on cross-examination, based on books. were for the purpose of contradiction, still as they had testified to deriving knowledge from books as well as from observation, appellee should be allowed to show their testimony could not be sustained by the authorities. Pinney v. Cahill, 48 Mich. 584; City of Bloomington v. Shrock, 110 Ill. 219.

Even if the court below erred in allowing the questions based on the statements contained in the books to be asked of said witnesses, this court will not reverse the judgment of the court below because Thompson and Ross, of whom said questions were asked, were not experts and should not have been allowed to testify as such. Lawson on Expert and Opinion Evidence, 210. Rule 39 says: "An expert may be qualified by study without practice or by practice without study. But mere observation without either is insufficient." Citizens' Gas Light Co. v. O'Brien, 15 Ill. App. 400; Page v. Barker, 40 N. H. 59; Emerson v. Lowell Gas Light Co., 6 Allen, 146.

The expression of a warranty as to quality in a contract leaves no room for implication by law of a further warranty as to quality. Rowe v. Farren, 8 Irish Com. Law R. 46; Dickson v. Zizenia, 70 Eng. Com. L. 602; Deming v. Foster, 42 N. H. 165; McGraw v. Fletcher, 35 Mich. 104; Johnson v. Latimer, 71 Ga. 470.

BAKER, P. J. Appellee and appellant entered into a written contract on the 28th day of September, 1883, whereby the former agreed to furnish, deliver and set up for appellant at its factory a Fermenich safety steam boiler of 150-horse power and of the character and dimensions described in said contract. Appellee also guaranteed therein said boiler should be non-explosive, should make steam as rapidly as any boiler now in use, be as durable, and be free from accumulations of soot and ashes on the tubes, and be capable of carrying ninety to one hundred pounds of steam as a working pressure, and agreed to make all repairs caused by defective material or inferior workmanship upon said boiler for the term of one year from the date that the boiler was ready to make steam, provided the defective parts or leaky tubes should not have been caused by carelessness on the part of the employes of appellant. In consideration of which, appellant agreed to pay to appellee the sum of $3,800 in four equal installments of $950 each, payable in thirty, sixty, ninety and one hundred and twenty days respectively, from the date the boiler was complete and ready to make steam.

Forest City Ins. Co. v. Morgan.

The present suit was brought by appellee to recover the last due of these payments, and a small residue claimed to be un. paid of the preceding payment. Appellant, on the ground that within the year, by reason of defective material or infe. rior workmanship, or both, the boiler cracked at many of the rivet heads in the flue sheets of both mud drums adjoining the furnace flues, and that appellee after notice given, failed and refused to make repairs, claimed he was damaged, and sought to set off or recoup his damages. The verdict and judgment below were in favor of appellee for $1,052.28, the full amount of his claim.

Appellant cites and relies upon Strawn v. Cogswell, 28 Ill. 457, and Phelan v. Andrews, 52 Ill. 486. The doctrine of these cases is, that where there has been a sale and delivery of machinery and it is subsequently found to be defective, the measure of damages is a sum of money sufficient to alter the defective machinery to what it should have been under the contract, with a reasonable compensation to the vendee for its use during the period of time necessary to make the change. Tested by this rule, and if the duty to repair the boiler properly devolved upon appellee, he was only bound to make repairs of such nature as would make the boiler what it should have been under the contract. The claim of appellant, as made by its evidence and argument, seems to be that when appellee was called on to repair, he should have put an entire new sheet in the boiler so as to make a first-class or perfect job and render the boiler as *good* as any in use. We do not understand such to be the requirement of the law. The rule is that the expression of a warranty as to quality in a contract leaves no room for implication by law of a further warranty as to quality. Deming v. Foster, 42 N. H. 165; McGraw v. Fletcher, 35 Mich. 104; Johnson v. Latimer, 71 Ga. 470; Dickson v. Zizeria, 70 Eng., C. L. 602; Rowe v. Farren, 81 C. L. R. 46; McClelland v. Stewart, 12 I. L. R. Ex. Div. 125. The warranty in the contract was not that appellee would make the boiler as perfect in all respects as any first-class boiler, or that he would make it as good as any now in use. The guaranty in that behalf was that the boiler should be as durable as any now in use.

The real question at issue, and which should have been submitted to the jury by the evidence and the instructions of the court, was whether the proposed manner of repairing would have caused the boiler to be as durable as any now in use.   The instructions given on this branch of the case at the instance of appellee were erroneous, in that they did not impose upon him so great a burden as was placed upon him by the law and the terms of his contract.   These instructions, severally, cast upon him the duty to repair, " in a proper manner," " in a good and workmanlike and customary manner," and " in a reasonably skillful, thorough and efficient manner." These requirements did not come up to the standard fixed by his own contract, as by that contract he was bound to so repair the boiler as to make it as durable as any now in use.

It was also error to permit counsel for appellee, over the objections of appellant, to read in the presence of the jury to the witnesses Thompson and Ross, on their cross-examinations, extracts from the treatises of Wilson, Barr and Schook on steam boilers.   The witnesses were testifying as experts, but it was immaterial, under the circumstances of the examination, whether they were properly experts or not; in either event, the theories in the above mentioned scientific works were incompetent testimony.   In City of Blooming-ton v. Shrock, 110 Ill. 219, the rule was held to be against the admission of scientific books as evidence in chief, and also against allowing them to be read from to contradict an expert, generally.   In the present case the latter clause of the rule stated has application.   This case does not fall within the doctrine held in Connecticut Mutual Life Ins. Co. v. Ellis, 89 Ill. 516, where the expert assumed to base his opinion upon particular works and treatises, and such works were permitted to be read in contradiction, and the attention of the witness called to them.   The case is on all fours with the case first cited, as the witnesses did not base the opinions which they gave upon the authority of books, and the books were only referred to on the cross-examinations and brought in to impair their evidence.

We may also properly make a further remark with refer-

ence to the instructions. They should have submitted to the jury the question whether notice of the cracks in the boiler was given to appellee within a reasonable time after appellant knew of them.

The Circuit Court properly ruled that the burden of proof was upon appellant to show a breach of the warranties contained in the witten contract; the case presented is not that of conditions precedent, but one that involves the matter of independent stipulations. Don v. Fisher, 1 Cush. 271; 1 Chit., 323; Maltman v. Williamson, 69 Ill. 423.

For the errors indicated in this opinion, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*